FILED

**CAVIAR MICKENS**
**2309 SANTA MONICA BLVD.**
**SANTA MONICA, CA 90404**
**424.436.1071**
**CAVIARMICKENS36@YAHOO.COM**
**SELF-REPRESENTING**

2021 DEC 20  PM 3: 04



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION OF LOS ANGELES**

LACV21-9798-ODW-MAA x

**CAVIAR MICKENS,**

       **Plaintiff,**

**vs.**

**HOUSING AUTHORITY OF THE CITY**
**OF LOS ANGELES, LOS ANGELES**
**COUNTY, et al.,**

       **Defendant(s)**

**FEDERAL TORT CLAIM FOR:**

1. **HOSUNIG DISCRIMINATION**
2. **DICRIMINATION IN SECTION 8 HOUSING**
3. **CONSPIRACY TO DEPRIVE HOUSING ASSISITANCE**
4. **HOUSING DISCRIMINATION BASED DISABILITY**
5. **FAILURE TO PROVIDE REASONABLE ACCOMMODATION**
6. **PRELIMINARY INJUNCTION RELIEF**


**(Amount Exceeds $75,000.00)**


**JURY DEMAND: NO**
**COMPENSATORY DEMAND: YES**

<u>**COMPLAINT AND NONJURY DEMAND**</u>

<u>CaviarMickens36@yahoo.com</u>

1. **PLAINTIFF (herein as "CAVIAR MICKENS"), pursuing a civil action for housing**

---

FEDERAL TORT CLAIMS FOR HOSUNIG
DISCRIMINATION AND CONSPIRACY
TO DEPRIVE HOUSING ASSISTANCE

PAGE 1 OF 41

discrimination, conspire to deprive housing, housing discrimination based on disability and failure to provide general housing, against defendants, Housing Authority of the City of Los Angeles, Los Angeles County, Los Angeles County Sheriff's Department, Los Angeles Police Department, Division of Adult Parole Operations and Path, and plaintiff will state the supportive material facts to claims against all defendants without prejudice of the following:

## NATURE OF ACTION

2. The federal civil action is bases on Federal Tort Claims, pursuant to Federal Tort Claims Act and 28 USC § 1346(b) see in Aretz v. U.S., 604 F. 2d 417 (5th Cir. 1997), 635 F. 2d 485(authorization of filing suit against employee or office of the United States). (*see also United States v. Park Place Aaocs., Ltd (9th Cir. 2009) 553 F3d 907, 924(such action must be brough in federal court)*: Plaintiff had filed Section 8 housing assistance application with defendant, thereat Department of Section 8 of the Housing Authority of the City Los Angeles and whereas the defendant tortuously denied application not based on regulatory policy as plaintiff had discovered and affirmed the fact thereat in 2021 and as the defendants ware under color of state law and acted in bad faith and with malice intent in reckless, wanton of plaintiff departed from equal process of housing and due process of housing and willful disregard of Plaintiff's human, safety rights to housing assistance.

3. The plaintiff had discovered he was under surveillance by the defendant Los Angeles County Board of Supervisors and discovered therein of 2021 county and city law enforcement agencies had committed collective pattern of ego series of federal constitutional violations by interfered with plaintiff having substantive rights to housing

assistance by means of one instance of electronically phone-tapping plaintiff's cellular phone and by redirected plaintiff's phone-call applications from Housing Authority of the City of Los Angeles. (*Med-Central Fish Co. v. United States (1953, DC Mo) 112 F Supp 792, affd (CA8 Mo) 210 F2d 263, cert den 347 US 967, 98 L. Ed 1108, 74 S. Ct. 778)(injustice recognized)*; *Glade ex rel. Lundskow v. U.S., 692 F.3df 728 (7th Cir.  2012)(FTCA suits against federal employers)*).

4.  The action also based on "<u>monetary compensation</u>" and having plaintiff be granted of awarded desirable "<u>rental coverage</u>" for housing assistance for any resident unit for a term of eight years pursuant to Section 1357 of Title 28(Judiciary and Judicial Procedure) and <u>42 U.S.C. § 1437(c)(f)</u> and California law remedies for housing discrimination: Plaintiff seeks defendants be liable for partial percentage coverage of rental unit or apartment or sub-live placement for the amount equivalent of plaintiff condition to deprive of housing discrimination thereat in the County of Los Angeles, and therefore, the liability for housing discrimination based on plaintiff  a member of a protected class and condition status and disability of plaintiff and plaintiff had suffered injuries as a result from defendants conditioned plaintiff to homelessness condition living. (<u>Munoz-Mendoza v. Pierce, 711 F.2d 421, 424-426 (1st Cir. 1984)</u>(local government entity responsible for injuries claimed by plaintiff).

5.  And action of remedy will be based on plaintiff dangerous living condition and incurred medical expenses as a direct result of defendants' housing discriminatory acts pursuant to under California law remedies for housing discrimination. (*Joseph v. U.S., 121 F.R.D. 406, 411 (D. Haw. 1988)(liability sanction against government as result of Department of Justice*

---

FEDERAL TORT CLAIMS FOR HOSUNIG
DISCRIMINATION AND CONSPIRACY
TO DEPRIVE HOUSING ASSISTANCE

*policy—stipulating liability when facts cannot be disputed*)).

**I.**
**JURISDICTION AND VENUE**

6. Plaintiff brings the federal civil action pursuant to <u>42 U.S.C. 3604</u>(declaration of policy)-<u>3613</u> as violates under Fair Housing Act and Section 8 Act: Plaintiff discovered and had conclusively terminated housing discriminatory assistance and housing had been intended prejudicially against plaintiff's rights to housing assistance and housing and based on plaintiff's disabilities and putative status when the defendants had adequate knowledge of plaintiff's housing eligibility for suitable housing assistance and for any suitable environmental housing project within the County of Los Angeles. see *Griggs v. Duke Power Co., 401 US. 424, 91 S. Ct. 849, 28 L. Ed. 2d 158, 3 Fair Empl. Prac. Case (BNA) 175(Disparate impact); Gladstone Realtor v. Village of Bellwood, 441 US 91, 102, 99 S. Ct. 1601, 1609, 60 L. Ed. 2d 66, 78 (1979)(judicial proceedings for claims under section 3613 control private litigation whether or not an administrative complaint was filed with the services department); 29 U.S.C. § 794.*

7. Plaintiff will also bring this action under titles <u>28 U.S.C.A. § 1331</u> and <u>42 U.S.C. § 12101(a)(1)(b)</u> in violates of the American With Disability Act and Rehabilitation Act: Plaintiff had a mental disability that impede his' ability to have normal function. Defendants were at knowledge of plaintiff's disabilities as defendants were following plaintiff electronically through surveillance. *Borkowski v. Valley Cent. School Dist., 63 F.3d 131, 12 A.D.D. 272, 4 A.D. Cas. (BNA) 1264, 102 Ed. Law Rep. 928 (2d Cir.1995) (discriminatory action taken based on disability); see Lieberman v. Delaware, 70 Fed. Appx.*

1    *630 (3d Cir. 2003)(federal question of jurisdiction).*

2

3    **8.  Plaintiff further brings the action under titles <u>28 U.S.C.A. § 1343</u> and <u>42 U.S.C. § 1983</u>**

4    **in violates of Federal Civil Rights Act: The defendants, Los Angeles County of Board of**

5    **Supervisors, Housing Authority of the City of Los Angeles, Los Angeles County Sheriff's**

6    **Department, Los Angeles Police Department, Division of Adult Parole Operations and Path**

7    **discriminatory interfered with plaintiff housing assistance and refused to enter plaintiff**

8    **into housing assistance programs.** *<u>West v. Atkins, 487 U.S. 42, 43, 108 S. Ct. 2250, 101 L. Ed</u>*

9

10   *<u>2d 40 (1988)</u>(person claiming  under color of law must prove to establish a 1983 claim for*

11   *liability; <u>Casey v. Lewis, 4 F.3d 1516, 2 A.D.D. 908, 2 A.D. Cas. (BNA) 1820 (9th Cir.</u>*

12   *<u>1993)</u>(jurisdiction of civil cause of action)).*

13

14   **9. And plaintiff will bring this action under <u>42 U.S.C. § 12102</u> in violation of the Section 8**

15   **Act of 1937: All defendants had adequate knowledge of plaintiff had disabilities that**

16   **interfered with plaintiff's life's activity to have secure and stable housing and that plaintiff**

17   **needed accommodated housing.** *Morran v. <u>Nevada System of Higher Educ., 482 F. Supp. 2d</u>*

18   *<u>1202, 219 Ed Law Rep. 689 (D Nev. 2007; see also Alexander v. Choate, 469 U.S. 287, 105 S.</u>*

19   *<u>Ct. 712, 83 L. Ed 2d 661, 8 Soc. Sec. Rep. Ser. 6, 1 A.D.D. 204 (1985)</u>(reasonable*

20   *accommodation in activities or programs in generally)).* **And that the controversy is in**

21   **amount of over $75,000 whereas the district court have jurisdiction over the controversy**

22   **amount pursuant to 28 U.S.C. 1331 (federal district court jurisdiction over cases in**

23   **question which "A matter in controversy exceeds the sum or value of $75,000, exclusive of**

24   **interest and costs").**

25

26   **10.  Venue is proper in this jurisdiction of Federal District Court and division pursuant to**

27

28

---

FEDERAL TORT CLAIMS FOR HOSUNIG
DISCRIMINATION AND CONSPIRACY
TO DEPRIVE HOUSING ASSISTANCE

PAGE 5 OF 41

28 U.S.C. §1391(a)(1)(b)(e) and that under Title VII of the Civil Rights Act is further proper. (see *Bolar v. Frank, 938 F. 2d 377, 56 Fair Empl. Proac. Cas. (BNA) 577, 56 Empl. Prac. Dec. (CCD) P. 40871 (2d Cir. 1991)*) Defendants' primary employment of business is in this district of the County of Los Angeles and Defendants' independent and collective malicious attribution to plaintiff's injuries and damages to housing opportunity and unlawful federal constitutional violations rise to the claims herein accrued within this district and division for housing discrimination based on disability and other vicarious putative facts, therefore, venue is proper.

11.  At all material times against defendants, Defendants committed these unlawful violations under color of state laws in bad faith and with malicious purpose in intentional negligence in wanton, and willful disregard of Plaintiffs' human and safety rights for housing assistance and accommodation within the County of Los Angeles.

12.  These constitutional law violations thereof the Federal Housing Act and Section 8 Act and American with Disability Act are all "capable of repetition, yet review" in *Moore v. Ogilvie*, 394 U. S. 814, 816 (1969)(challenge to the constitutionality of a statute).

II.
**PARTIES**

(Injured and Damaged Plaintiff)

13.  I, CAVIAR MICKENS (herein as "Plaintiff") to the civil action, and an individual citizen of the State of California whereas plaintiff applied for housing assistance and whereas the injuries and damage occurred in housing discrimination.

14.  Plaintiff CAVIAR MICKENS is an adult male California resident residing within this Court's jurisdiction and otherwise sui juris therein this year of 2021.

(State and Local Government)

15.  The Los Angeles County whom is a party to this action Fed. Rul. Civ. Proc. §§ 19(1) (B)-20 and is (herein as "Defendant") and the defendant is an government entity of the State of California and had engaged in housing discriminatory acts against plaintiff's constitutional state rights, at the address 500 W Temple St, 10th Floor, Los Angeles, CA 90012, and may be served with U.S. Marshal process pursuant to Federal Rules of Civil Procedures Section 4(c)(e)(i)) served with a copy of the summon and herein with this complaint pursuant to F.R.C. § 4(j)(i).

16.  Housing Authority of the City Los Angeles whom is a party to this action, and is (herein as "Defendant"), and is a local government public entity of the County of Los Angeles and had engaged in housing discriminatory acts against plaintiff's constitutional state right, at the address 2600 Wilshire Blvd., Los Angeles, CA 90057and may be served with U.S. Marshal process pursuant to Federal Rules of Civil Procedures Section 4(c)(e)(i))), and served with a copy of the summon and herein this complaint pursuant to F.R.C. § 4(j)(i).

17.  The Los Angeles Sheriff's Department whom is a party to the action (Fed. Rul. Civ. Proc §§ 19(1)(B)-20) and is (herein as "Defendant") and is a law enforcement service agency of the County of Los Angeles, and had engaged in housing discriminatory acts against plaintiff's constitutional state right at the address 500 W Temple St, Room 383, Los Angeles, CA 90012 and may be served with U.S. Marshal process pursuant to Federal Rules of Civil

Procedures Section 4(c)(e)(i))) and served with a copy of the summon and herein with this complaint pursuant to F.R.C. § 4(j)(i).

18.  The Los Angeles Police Department whom is a party, and is (herein a "Defendant") and is a law enforcement city service agency and had engaged in housing discriminatory acts against plaintiff's constitutional state right at the address at the address 100 W 1st Street, Los Angeles, CA 90012 and may be served with U.S. Marshal process pursuant to Federal Rules of Civil Procedures Section 4(c)(e)(i))) and served with a copy of the summon and herein with this Complaint pursuant F.R.C. § 4(j)(i).

19.  The Division of Adult Parole Operations is a party to this action and is (herein a "Defendant"), and is a state department agency of the State of California (Cal. Code of Reg. § 3500; 42 U.S.C. 9620(federal facility)) and had engaged in housing discriminatory acts against plaintiff's constitutional state right at the address of 2444 South Alameda Street, 2nd Floor, CA 90058, and may be served with U.S. Marshal process pursuant to Federal Rules of Civil Procedures Section 4(c)(e)(i)) at the address 2444 South Alameda Street, 2nd Floor, CA 90058], and served with a copy of the summon and herein with this complaint pursuant to F.R.C. § 4(j)(i).

(Private Organization)

20.  Path whom is a party to the action and is (herein a "Defendant") and is organization within of the City of Los Angeles and offers private services for the homeless person or low-income person and therewithin the County of Los Angeles and but had engaged in housing discriminatory acts against plaintiff's constitutional state right at the address of 2346 Cotner Ave, Los Angeles, CA 90064 and, and may be served by a private process server pursuant to

Federal Rules of Civil Procedures Section 4(a)(b).

III.
FACTUAL OF INFORMATION

21.  Plaintiff had resided in the County of Los Angeles therein 2005 and as majority in homeness living condition (as defined in title 42 U.S.C. §11360(2)(A)(i)) to 2021 and where plaintiff was subjective to housing discriminatory acts therefrom 2005 to 2021.

22.  Plaintiff had been stalked by county deputies and under surveil governmental interest from thereat year 2005 to 2021 and while plaintiff was subjected to under homeless living condition as racially and discriminated conditioned by defendants.

23.  Plaintiff was under conditioned surveillance and subjected to condition by governmental conductivity that had cause interference with plaintiff having provide with housing assistance as plaintiff was homeless and having disability [42 U.S.C §11360(9)(IV)]. And, as government defendants had waived, there rights to immunity protection for illegal interference of plaintiff's housing assistance while surveilling plaintiff, the defendants had acknowledge their discriminatory acts but in blanketing inexcusable ignorance of continuation of governmental interference conductivity and law enforcement abusive of congressional authorization that had an adverse depravity. years (see exh. D, doc 1: Periodic Timeline Chart, colors)

24.  Plaintiff had discovered thereat the year 2021 that defendants, County of Los Angeles (Board of Supervisors), the Housing Authority of the City of Los Angeles, Los Angeles County of Sherriff's Department, Los Angeles Police Department, Division of Adult Parole

Operations had attributed to concert of housing discrimination therefrom the year 2005 to 2021 during official capacity under color of law. see *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978), *inter alia* (citing 1983 claims for "any person under color of law whom deprive a person from protected federal rights of regulation is civilly liable for injuries").

25.  Plaintiff had moved from the State of Tennessee, with no stable financial source of income and no arranged permanent housing placement in the County of Los Angeles. Thereby plaintiff was of no permanent residency, thereat homeless in the County of Los Angeles. Sometimes in between May 2005 to June 2005 whereas plaintiff had moved to the county and been offered shelter assistance of a two-week hotel voucher from the Department of Public Social Services.

26.  From threat of services by the Los Angeles County of Department of Public Social Services, plaintiff was giving 'an information form that had contain the information of "applying for section 8 housing assistance", as plaintiff was newly to services and 'verbally instructed to telephonically contact the Section 8 Department for applying for section 8 housing. Plaintiff was informed by a case worker of Department of Public Social Services 'there would be a waited period about 1 to 2 years of Section 8 housing assistance approval' from the time plaintiff had applied in year 2005.

27.  Plaintiff was not aware of Los Angeles County Sheriff's Department Deputies having visual and verbal observation of plaintiff at public county offices whereas plaintiff had seek or received aid of government assistance and plaintiff was not aware of 'deputies giving participatory interfered instructions and direction of his' caseworkers or employees of

county public offices. Plaintiff would receive fraudulent document of information pertained to Section 8 application process. Plaintiff had been instructed to via telephonically communicated with Los Angeles City Operator 'to process section 8 application'. Los Angeles County Sheriff's Department deputies informed plaintiff that 'the sheriff's department and Los Angeles Police Department was always aware of his' whereabouts at the Department of Public Social Services and in location of defendant Housing Authority of the City of Los Angeles each time plaintiff would file applications with defendant and was listing and recording his' outing and incoming cellphone calls', as deputies would in a derision mocked manner had taut plaintiff embarrassedly of the occurred surveillance conductivity in the past 16 years. *see Soldal v. Cook County, Ill., 506 U.S. 56, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992)(illegal search and seizure whereas plaintiff states a cause of action for unconstitutional acts—sheriffs conspire in conspiracy to remove plaintiff from rental services)).*

28.  Plaintiff applied for housing assistance for Section 8 housing within the County of Los Angeles and to the Housing Authority of the City of Los Angeles but plaintiff had been discriminatory anticipated denied and interfered with housing assistance by the defendants, Housing Authority of the City of Los Angeles, and Los Angeles County Sheriff's Department and Los Angeles Police Department in pursuant to title 42 U.S.C. § 3617(Under the Act for interference states: "No person shall make unlawfully to coerce, intimidate, threaten, of interfere with any person whom effect to enforce rights).[1]

---

[1] When plaintiff had been interviewed by Los Angeles County Sheriff Detectives in 2017 plaintiff had been giving notice of defendant Los Angeles County Board of Supervisors' inquisition of plaintiff's special disability. When plaintiff was interview sheriff detectives informed plaintiff that the board of supervisors were aware of the plaintiff's special disability condition [stimulus

---

FEDERAL TORT CLAIMS FOR HOSUNIG
DISCRIMINATION AND CONSPIRACY
TO DEPRIVE HOUSING ASSISTANCE

PAGE 11 OF 41

**29.  Particular Los Angeles County Sheriff's Deputies whom badge names are unknown conductivity" and plaintiff's private information record disclosure to employees of to the plaintiff had giving plaintiff verbal and electronic communicative notice to plaintiff, "that the County of Los Angeles had knowledge of the law enforcement agencies' Department of Public Social Services and Housing Authority" therein 2005 to 2009. see** _Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961)(negligent misuse of Authority)_; Hunton & Williams, LLP, v. United States Department of Justice (May 26, 2006)**(Exemption of government document be disclosure on ground of common interest).**

**30.  Plaintiff discovered and if had approval or authorized by the defendant Los Angeles County Board of Supervisors of "the public access to and disclosure plaintiff's private personal records and, of plaintiff's cellphone tracking location whereabouts" in unauthorized communication among public officers in a revelation administrative process, that had caused an adverse effect on plaintiff's protected Federal Constitutional 1st Amendment rights, that had interfered and hazardously damaged plaintiff's protected rights to any county housing assistance and fair housing accommodation.** _see U.S. v. Hayward, 6 F3d 1241, 1241, 1249-1251, 39 Fed. R. Evid. Serv. 821 (7th Cir. 1983)(forms of expression or virulent form in the intent to cause harm or damage); (Ragin v. New York Times Co., 923 F. 2d 995, 1002-1003 (2d Cir. 1991) (Fair Housing laws prohibit certain communication with housing transaction and that is view as a form of speech that lesser a First Amendment Protection Rights)._

---

hormonal condition] that was a common prejudiced concerned interest of departments of law enforcement agency (_Brock v. U.S. 570 F. 2d 976 (9th Cir. 1979(concurrent jurisdiction)_)) and the reason why the defendants had defiled plaintiff in public dissemination. Plaintiff determined without prejudice that the directors of Housing Authority of the City Los Angeles were

---

**FEDERAL TORT CLAIMS FOR HOSUNIG
DISCRIMINATION AND CONSPIRACY
TO DEPRIVE HOUSING ASSISTANCE**

**PAGE 12 OF 41**

**31.  Thereat, then in May 2005 plaintiff was informed by the Los Angeles County of Department of Public Social Services, of "applying for section 8 housing assistance", and was verbally instructed to telephonically contact the Section 8 Department for applying for Section 8. Plaintiff discovered and determined in 2021 'that plaintiff's outgoing cellphone calls in the years between 2005 to 2009' was redirected by and to law enforcement agencies thereof by Los Angeles County deputies and Los Angeles Police officers outside purposes of lawful authorization: Few Los Angeles County deputies whom badge names remain unknown to the plaintiff, had stated vicarious "plaintiff's calls were tracked based on surveillance that wasn't authorize for legitimate investigation and the tracking was by they department equipment".[2] (see exhibit D: Law Enforcement Phone Tracker Devices)**

**32.  Plaintiff discovered in the year 2021 of the wanton of misconduct through surveillance conductivity [of officers in public dissemination of plaintiff's personal life activity.**

**33.  Plaintiff had been received constructive notice from the defendant Housing Authority of the City of Los Angeles, Los Angeles County and the Los Angeles County Sheriff's Department "that plaintiff would not be provided housing assistance from the Housing Authority, 'because defendant procured plaintiff was a reasonable exceptional factor to be discriminated in housing assistance and that not processing plaintiff's application was a protected interpreted immunity because codefendants [Los Angeles County Sheriff's**

_____

informed as well, since the members are of functional operating attributors to board of supervisors' public matters and functionality; see _Nystedt v. Nigro, 700 F. 3d 25, 30-31(1st. Cir. 2012)_("performing judicial function whereas discovery is obtained"); _D'Angelo v. New Hampshire Court (1st Cir. 2014)_(performing function having inextricably intertwined with judicial function).

Department and Los Angeles Police Department] proclaimed plaintiff was <u>black and dark</u> <u>skinned and can endure suffering outside</u> and was surveilling plaintiff and wanted to arrest and have plaintiff in malicious want of prosecution because they thought plaintiff would potentially commit some public government interest that would disqualify plaintiff from housing program eligibility] and even if the defendants did not had intention to prosecute plaintiff in judicial process", reference by supervisor employee. see *Ryan v.* *Board of Police Com'rs of City of St. Louis, 96 F.3d 1076, 36 Fed. R. Serv. #d 81 (8th Cir.* *1996)(pattern of discovery statements by police defendants); (U.S. v. Kordel, 397 U.S. 1, 90 S.* *Ct. 763, 25 L. Ed. 2d 1, 13 Fed. R. Serv. 2d 868 (1970))('verbal notice').*

34. Plaintiff, Caviar Mickens had first register application to the Department Section 8 at the Housing Authority of the City of Los Angeles, at the address 2600 Wilshire Blvd., Los Angeles, CA 90057, in the year 2005 by telephonically. Plaintiff was not aware of his' cellphone electronically tracked (systemically link to redirection) by the Los Angeles Police Department and Los Angeles County Sheriff's Department.

35. At between periods of 2005 through 2014, plaintiff had been discriminatory removed from application process and denied notice and had been interfere with Section 8 application process. Plaintiff had determined under reasonable factual statements by Los Angeles County Sheriff's Department deputes giving plaintiff constructive notice and

---

[2] Plaintiff, Caviar Mickens was eligible for housing assistance. The defendant Los Angeles County had knowledge of plaintiff's mental disability. see *Casa Marie, Inc. v. Superior Court of Puerto Rico* *for Dist. of Arecibo, 988 F.2d 252, 257 n.6, 1 A.D.D 710 (1st Cir. 1993)(Under FHA may protect* *person with a disability)*

FEDERAL TORT CLAIMS FOR HOSUNIG
DISCRIMINATION AND CONSPIRACY
TO DEPRIVE HOUSING ASSISTANCE

verbal statements. Plaintiff asked all individuals in speculation 'why deputies and police

officers informed plaintiff of the embarrassing and illegal activity without caution',

few individuals replied of 'they thought plaintiff was mental retarded and gay", as

derisively stated by individuals.


36.  Plaintiff determined the allegations was equitable tolling of housing discrimination

therefrom 2005 to 2021 and by the adverse participated conductivity of the co-defendants,

and malice intended to cause of interference with housing assistance and accommodation',

as the facts was discovered in vicarious circumstance and statements by defendants'

employees. see *Bank of America Corp. v. City of Miami, Fla, 137 S. Ct. 1296, 1306, 197 L. Ed.*

*2d 678 (2017)*(proximate cause under FHA requires some direct relation)


37.  Plaintiff had been near a facilities station (Los Angeles County Man

Central Jail) and of public services operations (Los Angeles City Public Areas (train, bus,

park, and public buildings)) whereas multiple deputies recognized plaintiff by televised

public announcement and whom names are unknow to plaintiff verbally inform plaintiff of

hearsay and unverified allegations of their fellow officers' acts: Plaintiff was attended to

his' personal activity when 4 or more deputies had noticed plaintiff by facial recognition

and approached plaintiff of 'constructive delivering sounding confidential information of

"deputies and sheriffs surveilling plaintiff and requested in loosed indirect manners of

defendant Housing Authority of the City of Los Angeles 'not to help plaintiff in section 8

housing program", when plaintiff had been subjective in dissemination while under surveil

interest by Los Angeles Police Department and the Sheriff's Department to the Housing

Authority of the City Los Angeles and employees. See *Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 354, 100 Cal. Rptr. 2d 352, 378, 8 P.3d 1089(2000)(circumstance inference—burden shifting framework test).*

38.  Plaintiff further discovered in 2021 Los Angeles Police Department surveilling and stalking plaintiff for 16 years, and surveilling plaintiff while defendant was under color of law. Plaintiff was informed by Sheriffs 'that the defendant's internal affairs department had reported that some officers where under racial influence for the unauthorized cellphone tracking of plaintiff's and for the proportion of degreed fault attributable to contacting employees of defendant Housing Authority to interfere with plaintiff's application'. see *National Congress for Puerto Rican Rights v. City of New York, 191 F.R.D. 52 (S.D.N.Y. 1999)(policy and practice of racial profiling established by statistic evidence).*

39.  Plaintiff personally contacted the defendant, Housing Authority of the City Los Angeles and only to discovered there had been no record of plaintiff's application for section 8 housing assistance. see *Doe v. City of Memphis, 928 F.3d 481, 104 Fed. R. Serv. 2d 124 (6th Cir. 2019)("liberal discovery")* Thereby after plaintiff investigated the allegation of the Los Angeles County Sheriff's Department assertion, the housing discrimination by defendants as alleged by Los Angeles County deputies had been confirmed by plaintiff thus of the housing discrimination and based on discriminatory factors in the FHA Prohibition. U.S. v. Kaixiang Zhu, 854 F.3d 247, 103 Fed. R. Evid. Serv. 126 (4th Cir. 2017)(General Hearsay Rule of F.R.E. § 801(a)(2); see also *Drasek v. Burwell, 121 F. Supp. 3d 143 (D.D.C. 2015)(causation standard).*

40.  In continued occasions, both defendants [Los Angeles County Sheriff's Department

and Los Angeles Police Department] told plaintiff 'in during his' private and solitary activity that agencies had monitor plaintiff by cellphone tracking and had interfered with plaintiff 's Section 8 Applications and thus rights to housing assistance "because they though plaintiff was a racist" as law enforcement officers of Sheriff's Department and Police Department had delivered in sounded conversion directly to plaintiff's mindful attention. see *U.S. v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 l. ed. 1368 (1941)(Misuse of power of authority when cloth with virtue state law of authority); Griffin v. Breackenridge, 403 U.S. 88, 102, 915 Ct. 1790, 1798 (1971)(Conspiracy based on conspirators' action of some racial motive or racism invidious animus intent).*

41.  In plaintiff's recollection of observation of 'defendant's eco pattern reflection' of absent administrative archive records therefrom 2005, 2005 of plaintiff's application records, no application record of plaintiff Caviar Mickens was stored by defendant. Plaintiff assumed Section 8 application was terminated and refused as housing discriminatory practice by the defendant Housing Authority of the City of Los Angeles and participation with codefendants, Los Angeles County Sheriff's Department and Los Angeles Police Department, and plaintiff established the divestitive fact of matter alleged by accusers of the Los Angeles County Sheriff's Department pursuant to F.R.E. § 301(Mandatory presumptions and permissive presumption).

42.  Plaintiff had discovered learn and determined in year 2021 the defendant Division of Adult Parole Operations, had discriminatory interfere with chose of housing assistance in the year 2014: Acts in of concert of computer surveillance tracking and redirect to fraudulent and monopolistic stagnation host webpage of 'housing ads' of plaintiff's laptop

server as the Internet Domain Name Search Engine or DNS (Domain Name System).

43.  Plaintiff was subjected to hacking or controlled internet jurisdiction thus retardation of networking public surveillance activity. *15 U.S.C. 1125-17 U.S.C. §101*; S. Rep. 106-140, 106th Cong., 1st Sess. 1, 11 (1999); *Computer Associates Int'l v. Altai, Inc. 982 F. 2d 693, 696 (2d Cir. 1992)(Copyright law—Website Notice to Digital, limitation of blocking); see Computer Fraud and Abuse Act*.

44.  And while plaintiff was legally conditioned under state surveillance: Plaintiff had been release on state parole supervision thereat in 2014. Defendant was mandated to be surveil and as a parolee under supervision condition by any means of electronically satellite tracking. see *Penal Code §§ 3500-3540(Electronic monitoring technology to known whereabouts of parolees); see also Foreign Intelligence Surveillance Act of 1978; The Drone Federalism Act(SB-Bill introduced in the 115th Congress by U.S. Senators Tom Cotton (R-AR), Dianne Feinstein (D-CA))*.

45.  Plaintiff discovered and determined in 2021 of the defendant Division of Adult Parole Operations that had unjustifiably attributed to discriminatory cause of unwanted housing assistance for plaintiff within the county of Los Angeles and discriminatory chose of housing: The defendant told plaintiff 'he was under secrete surveillance by parole agents of '2014 through 2021'. The defendant Division of Adult Parole Operations informed plaintiff 'the agency wanted plaintiff in homeless condition and among distraught mental disable persons and among parolee informants'. The defendant further had verbally explained to plaintiff "while he had served a parole violation on October 13, 2015, they had indicted instruction to the Los Angeles County Sheriff's Department Correctional Facility

Deputies', as unlawful combinatory sensual agreement 'to disregard issuing plaintiff linens for his' jail cell for two days, that they wanted the jail facility to manifested sense that plaintiff was homeless on the street and majority sleeping without a blanket".

46.  The defendant, stated of "plaintiff's incarceration for parole violation on November 2, 2015 or sometimes after and served 180 days in county jail in segregation housing unit, wanted plaintiff among racist deputies and informants, to performed jailhouse psych activity, so that plaintiff would be distracted from racist and recorded jailhouse cell activity and as deputies plot to having plaintiff's body odor in transformation of odor change, so that when plaintiff would be release from jail, plaintiff would be in return of homeless condition and plaintiff would be conditioned to homeless smell in the public and for females would smell plaintiff foil odor. And that parole agents where going to permanently conditioned plaintiff on recorded surveillance for their superiors' attention and to gain promotion by sexual humiliated plaintiff". Plaintiff had believed that defendants' racist premeditated motivation to condition him was based on plaintiff's being a member of protected class and familiar status.

47.  Defendant Division of Adult Parole Operations had told plaintiff "that Los Angeles County Sheriff's Department was jointed conspirator of attacking plaintiff's internal organs for odor changes by means of food digestion and absorption by soap for the purpose of giving the appearance plaintiff would be homeless and without a house to sleep in", as plaintiff was recovering from comatose condition from police investigation [Los Angeles County Sheriff's Department and Los Angeles Police Department].

48.  Plaintiff odor was 'changed and 'change to unpleasant conditioned' (see *German*

*History The Biological State: Nazi Racial Hygiene(1933-1939)("Nazi Genocide Hygiene Chemical Assaults")*, and thereby plaintiff odor changed for 5 years. In 2015 through 2020 plaintiff odor had changed for the concurrent purpose of plaintiff being conditioned to general homeless reputation, and plaintiff was homeless as the defendant had engineering influence of racial housing discrimination. Prior to plaintiff's lease from prison, plaintiff had recalled that the Los Angeles County Sheriff's Department sheriffs had made indication 'that the parole division was going to make plaintiff homeless and was going to condescended offering housing assistance to plaintiff in nearby dangerous homeless environment', during a follow up investigative interview by Los Angeles County Sheriffs when plaintiff was incarcerated in the County Jail thereat in August 2018, Los Angeles County Sheriffs also had indicated Los Angeles Federal Bureau of Investigation agents had parted in interference of housing and housing discrimination assistance. Plaintiff did not reported the allegation because the alleged hearsay premeditated motive and or the no reasonably manifested motion of the course had risen to substantiated vicarious circumstance.

49. Plaintiff had follow-up complaint of the relayed allegation by the Los Angeles County Sheriff's Department to Board of Parole, but plaintiff did not receive a respond. Defendant had ignored all plaintiff assertive allegation by obvious to avoid argumentum ad ignorantiam of correspondence by the defendant Division of Adult Parole Operations.

50. Plaintiff had record copies of the submitted complaint to the Board of Parole for housing interference and discrimination by parole agents. Plaintiff had attended to out-of-state emergence care (Washington D.C. University Hospital) for his' serious nervous

syndrome and seizures before plaintiff resume to matter. When plaintiff had return to the State of California, plaintiff's storage was invaded whereas plaintiff had stored all records for safe keeping and of particular records had been stolen from plaintiff.

51. Plaintiff discovered that parole agents, Los Angeles County deputies and Los Angeles Police officers, and informants of the agencies where illegally having access to plaintiff Storage: Plaintiff was attentive to his' laptop in a coffee shop when two Los Angeles County deputies told plaintiff "that some people were having access to plaintiff's storage and they were surveilling plaintiff, and had discovered by their operative informants, they had discovered that some law enforcement agencies' officers wanting particular records of plaintiff's" as they give plaintiff warming of the occurred activity when plaintiff had been of state.

52. Plaintiff's record copies of "criminal records of motions, appeal complaint and complaint of housing discriminations to Board of Parole" were all missed from plaintiff's storage united. Plaintiff did not file a police report due his unlawful restricted conditions [plaintiff was not allowed to contact law enforcement for any emergency as order by judge and requested by a law enforcement agency].

53. Plaintiff reported housing discrimination and chose of housing to the Appeal Board of Parole: Plaintiff had stated in explanation of 'when he was released from prison in 2014 on parole, plaintiff had no awareness that individual parole agents were the cause of plaintiff constructive force chose of residency and among drug addicts and, that some agents where conditioned plaintiff in homeless habitation by caused plaintiff to be employment circumstance of hostile working employment so that plaintiff would be unemployed and

have no source of income to pay his rent then in 2014. Parole Agents were concocting interference with parolee gang members in plaintiff's housing assistance and source of employments. Plaintiff gave further details of his' computer hacked and link to gang members' personal devices and that some parole agents had allowed the housing discriminatory activity and interference by parolees and prosecutors' witnesses of the Los Angeles District Attorney's Office"

54.  Plaintiff had discovered in 2020 defendant Path a private housing assistance organization had conceded under intentional prejudice influence with the other codefendants in discriminatory housing acts: Plaintiff had been approached in February 2019 for housing assistance by Path organization. Plaintiff had been instructed to have established source of income and then afterwards to contact Path for housing assistance.

55.  Plaintiff had established full stable employment and contacted Path for housing assistance but plaintiff was treated with disparate impact of sexual discrimination of housing assistance and ineffective of housing assistance because defendant vicariously informed plaintiff 'that defendant had believed 'plaintiff was gay and did not wanted to assistance plaintiff'. see Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)(if private person acting jointly with an official is also acting under color of law).

56.  Once plaintiff had obtained employment plaintiff had contacted the person (Maria) whom advised plaintiff to 'immediately once obtain employment to contact her by phone via call or text': Plaintiff made many text messages and phone calling to Path employee

FEDERAL TORT CLAIMS FOR HOSUNIG
DISCRIMINATION AND CONSPIRACY
TO DEPRIVE HOUSING ASSISTANCE

(Maria).

57. Plaintiff had constantly attempted to make contact with the housing assistant employee of Path: Plaintiff attempted many communications by text messages and telephone calls to Maria's mobile cellphone. But the housing assistant did not return communication with plaintiff.

58. Plaintiff had visited to the address of 2346 Cotner Ave, Los Angeles, CA 90036 to inquire of housing assistance and to follow of with the employee, Maria whom made contacted with plaintiff regarding apartment housing available and available for rent that defendant Path was going to provide for plaintiff to rent, with the assistance of defendant Path of March 2019. see *Davis v. Mansards, 597 F. supp. 334, 334-345 (N.D. Ind. 1984)(misinformation, of Black-African Americans discourage from applying whereas whites and Latin-Americans encouraged to apply).*

59. When plaintiff had conversated to another housing assistant employee of Path, 'the assistant would comment in low sotto voice that 'plaintiff was gay and faggot', in a prattle manner as the female assistant would make angry facial expression and reluctantly struggle to smile at plaintiff during the visit session.

60. When the female housing assistant was momentary away from her desk, plaintiff seen and heard of the assistant commented derogatory language with a male coworker and indicted familiar status of the plaintiff. And that the offensive comments said by the female employee, "Yah thats him, he a faggot, we have apartments available, but he doesn't want to say he's gay", then afterwards the coworker stated "He's gay anyway, forged it in his' face, don't help him" as plaintiff had indicted housing discrimination based on sexual

identity. As the female was in dismissive motion and turning away from the black male employee coworker the female stated of, 'They said [unknow suggested group individuals or referred entity(s)] to ignore him anyway, they trying to house him in the county', as indicted language code for county jail and as plaintiff had been familiar with jargon languages of law enforcement officers whom are assigned to street patrol.

61. The Path employee assistant had return to her desk, informed plaintiff of 'there were no apartment and housing shelter available for plaintiff'.  As plaintiff had about to leave from the desk of housing assistant, the housing assistant received a phone called. The phone call conversation indicted that the Path employee had been notify of plaintiff, prior to plaintiff's arrival at the address of 2346 Cotner Ave, Los Angeles, CA 90036 and it seem the female employee was influenced 'not to assistance plaintiff in housing assistance and to direct plaintiff to another assisted housing practice business'. see U.S. v. Youritan Const. Co, 370 F. Supp. 643, 648 (N. D. Cal. 1973)("prohibit practice making housing unavailable"); _Gladstone Realtor v. Village of Bellwood, 441 U.S. 91, 94, 99 S. Ct. 1601, 1605, 60 L. Ed. 2d 66, 73 (1979)_ (racial steering in segregation).

IV.
QUALIFICATION FOR HOUSING ASSISTANCE; PLAINTIFF SHOWING ELUGIBILITY

62. Plaintiff had physical disability (seizure) and [another special sensitive condition] and disability of mental impairment whereas plaintiff would have inability to perform normal function that would prevent him from providing self-care of stable housing. _42 U.S.C.A. §3602(h)(1)(2)(3); see also § 504 of Rehabilitation Act (29 U.S.C.A. § 794); Fitzgerald v._

*Green Valley Area Educ. Agency, 589 F. Supp. 1130, 1 A.d. Cas. (BNA) 601, 19 Ed. Law Rep. 556, 39 Fair Empl. Prac. Dec. (CCHP) 35180 (S.D. Iowa 1984).*

63.  Plaintiff disability was of mental impediment that had limited plaintiff's ability to normal self-care and source of income to provide for housing: Plaintiff informed defendant Housing Authority of the City of Los Angeles in the year 2005 and in 2006 'that his disability was holding him from obtained secure employment and whereas during his' employment, plaintiff would have difficulty concentrated on his' work tasks during thereafter had life-long years of the disability. *42 U.S.C.A. §3602(h)(1)(2)(3);* When 8 hour shift'. see in re Ellenburg v. New Mexico Military Institute, 572 F. 3d 815, 22 A.D. Cas. (BNA) 570, 246 Ed. Law Rep. 713 (10th Cir. 2009)("meaning of limitation"); see also Hopkins v. City of Wilmington, 844 F. Supp. 2d 549 (D Sel. 2012).

64.  Plaintiff possessed full mental impediment since 1985 as when plaintiff was an infant. Plaintiff had developed a special disability condition [confidential diagnose] since in the 1990s and obtained employments. Defendant's policy stated "if person met all requirement for Section 8 program housing, a person is eligible for housing assistance and that if a meet the necessary accommodation for expenditure assistance, the Department of Section 8 must admit applicant to participate in housing assistance program. (see exh. A, doc 1, pg 8-9(qualification of admission)); Alexander v. Choate, 469 U.S. 287, 105 S. Ct. 712, 83 L. Ed. 2d 661, 8 Soc. Sec. Rep. Serv. 6, 1 A.D.D. 204 (1985)("qualified individual" for reasonable accommodation in programs and activities).

65.  When plaintiff moved to Los Angeles County, plaintiff had qualified for housing

assistance with defendant, Housing Authority of the City of Los Angeles, thereat 2005 to 2012. But defendant discriminatory denied plaintiff housing assistance when the interference of the Los Angeles County Sheriff's deputies contacted defendant Housing Authority of the City Los Angeles to synchronized precipitated prejudice influenced of unauthorized personal information of plaintiff's record to cause plaintiff's application to be refused and removed from defendant. (see *Hampton v. Hanrahan, 600, 620-6221 (7th Cir. 1996)(communication among coconspirators—and the conspiratorial essence of nature);U.S. v. Jamstown Center-In-The-Grove Apatment, 557 F.2d 1079, 1080 (5th Cir. 1977)(Black applicants denied opportunity to rent).*

66.  Plaintiff contacted defendant and inquired his' applications. Defendant removed plaintiff's applications therefrom 2005 to 2007 from application process for Section 8 housing program of Department of Section 8. Codefendant, Los Angeles County Sheriff's Department informed plaintiff in vicarious sounding details of housing discrimination activities of, "Deputies contacted employees of the Housing Authority of the City of Los Angeles and asked to remove plaintiff's application and for employees to psych plaintiff in services because plaintiff was coming to the building", as defendant acted in act of agreement. Defendant Housing Authority of the City Los Angeles had no records of plaintiff's application therefrom between the year 2005 to 2012. see *LeBlanc Sternberg v. Fletcher, 67 F. 3d 412, 427 (2d Cir.1995)(conspiracy need not be shown by proof of an explicit agreement, but can be established by showing tacit understanding to carry out prohibited conduct).*

67.  Plaintiff was eligible for expenditure housing accommodation for his' mental disability

as the defendant, Los Angeles County was aware of plaintiff's diagnosed disability for 19

years when plaintiff was in state foster care. *42 U.S. C. § 3604(b)(Unlawful to "discriminate*

*against any provision of services because of race or color.*

68. Plaintiff was eligible for Section 8 Housing Assistance and had met all criteria thereat

plaintiff was partially mentally disable and with no established felony criminal records

from the time plaintiff had applied for housing assistance from the defendant Housing

Authority of the City Los Angeles thereat from 2005 to 2012. see *Southeastern*

*Pennsylvania Transp. Authority v. Gilead Sciences, Inc. 102 F. Supp. 3d 688 (E.D. Pa*

*2015)(for person whom is qualified individual with a disability);* (see exh. D, doc 1: Periodic

Timeline Chart, color red).

69. Plaintiff had been entitled to housing assistance for 8 years from defendant, Housing

Authority of the City Los Angeles, thereat from 2005 to 2012 (see exh. C: Illustrative

Graphic Line Chart), and had that not from the Codefendants' discriminatory interference

of plaintiff's substantive rights to housing assistance program that was based all

codefendants' discriminatory racial agendas of Los Angeles County of Sheriff's

Department, Los Angeles Police Department and the Housing Authority of the City of Los

Angeles. see *Hale v. Townley, 19 F.3d 1068, 1075-1076 (5th Cir. 1994); see Barr v. Clinton,*

*370 F. 3d 1196, 1201—2 (D.C. Cir. 2004)(conspiracy to gather and disseminated disparaging*

*information to retaliate when information was known false and published with malice).*

70. Plaintiff would had enjoyed the section 8 housing program and healthy living condition

from the time plaintiff applied many times in between years 2005 to 2009 if it had

been a different outcome of defendant, Housing Authority of the City of Los Angeles

assisted plaintiff and process plaintiff's application in the years 2005 and 2006 when the defendant had knowledge of plaintiff's multiple disabilities. see *42 U.S.C.A. §3602(i)(injury cause by occurred housing discrimination).*

**V.**
**CONTINUANTION**

71.  Employees of defendant Housing Authority of the City Los Angeles told plaintiff 'to return visit after five years has cumulated from the time plaintiff had reapplied in 2006". Each time plaintiff had return visits total of 10 years tolled to no application process by defendant's application data base.

72. While plaintiff had been conditioned to homelessness living and had been under surveillance by defendants Los Angeles County Sheriff's Department and Los Angeles Police Department, both defendants had disclosure of plaintiff 's satellite position location activities in dangerous manners.

73.  Plaintiff had determined in 2007 of one morning of a weekday, Defendant Los Angeles Police Department had informed or cause two and more civilians to be informed of plaintiff's location. Of the two civilians had stalked plaintiff based on the defendant had giving announcement of plaintiff's satellite position, in Hollywood, California. Plaintiff was in a stab altercation with one of the stalked civilian and plaintiff was hospitalized for approximate a week. Plaintiff had gone under surgery for the causation of defendant's act and hazardous act of release plaintiff's whereabouts.

74.  Plaintiff injury was a direct circumstance of plaintiff homelessness whereas plaintiff

consumed habituated condition in the City of Hollywood, on rooftops apartments for sleeping for safe keeping, and the day of plaintiff's stab altercation circumstance was a direct result of plaintiff wanted to consume a business's rest room for urination discharge.

75.  After plaintiff was release from the intense care surgery, a Latin-American Los Angeles Police Detective had visited and question plaintiff in a hospital room. The detective had indicated to plaintiff 'that the person whom stable was an LAPD informant for the Hollywood precinct and that the informant's statement indicated 'that plaintiff had approached informant in an intimidated manner and that plaintiff indicated that he was homeless and wanted someone to be his' friend so that plaintiff can have somewhere to live'.  Plaintiff told the questioning detective of "Thats not true, I didn't say nothing alike, and I don't know how the informant had known I was homeless".

76.  As plaintiff was conditioned to homelessness in the County of Los Angeles, plaintiff had developed health complication of sleep disorder.

77. Plaintiff was condition to improper healthy sleeping living as plaintiff had maintain employments. Defendants was aware of plaintiff's employment and further had conspired to interfered with housing assistance. Plaintiff had employments and had needed to admitted to housing assistance program.

78.  While codefendants had cause defendant Housing Authority of the City of Los Angeles maliciously denied plaintiff's application, plaintiff had physical disorder [confidential sensitive diagnosed information] had required immediate housing accommodation for plaintiff. Plaintiff assumed defendant Housing Authority of the City of Los Angeles was not

---

FEDERAL TORT CLAIMS FOR HOSUNIG
DISCRIMINATION AND CONSPIRACY
TO DEPRIVE HOUSING ASSISTANCE

at knowledge of plaintiff sensitive disorder. But plaintiff believes by his' best recollection that 'that plaintiff did in fact input the sensitive diagnosed information on the section 8 application'. Codefendants, Los Angeles County, Los Angeles County Sheriff's Department, and Los Angeles Police Department was at adequate knowledge of plaintiff disorder, as the Los Angeles County Sheriff's Department informed of 'departments of agencies had access and disclosure plaintiff's person medical records for public access maliciously'.

79.  Plaintiff believes best to his' recollection of informed defendant Housing Authority of the City of Los Angeles on the application 'that plaintiff had been diagnosed with diabetes". The diagnosed medical condition was a life threaten medical condition, plaintiff was at need of housing attention as plaintiff was in more dangerous circumstance in extreme stressed living condition.

80.  Plaintiff Caviar Mickens had addressed the matter of housing discrimination and racially misconducts in refusing plaintiff's application for 2005 and 2006 through the administrative process complaint by defendant Housing Authority of the City of Los Angeles. Defendant in 2021 advised plaintiff, 'that the claims alleged were no procedural available remedy and that time limitation had tolled after two-years because the acts where done in a specific time distance as alleged" and further stated in defense of plaintiff's reasonable discovery knowledge, 'That even if plaintiff was newly at discovery, no available jurisdiction can accommodate the issues acclaimed for redressing any prior policy making decision by any employee or executive officer". Defendant also indicted to plaintiff 'that defendant had waived rights to opportunity respondent to plaintiff's complaint', because as

stated by employees that executive officers were familiar with applicant and the conductivity by codefendants.

81. Defendant Housing Authority of the City of Los Angeles has a connected relationship with codefendant Los Angeles County Sheriff's Department, and relationship based on municipal contract services from the defendant Los County Sheriff's Department. (see exh. B: Intergovernment for Supplemental Services Agreement)

82. Codefendants had established a contractual relation prior to plaintiff's application in 2005. And had continued established relationship from between 2005 through 2020.

83. Also, Defendant Housing Authority of the City of Los Angeles has a mandatory functional relation with codefendant Los Angeles County (Board of Supervisors) and relation based on therewithin governmental capacity of public matters.

84. At the time threat in 2005 as plaintiff was conditioned to disparate impact treatment by the defendant Housing Authority of the City of Los Angeles and codefendant Los Angeles County Sheriff's Department, plaintiff was conditioned by portion of executive order of the former executive officer Lee Baca, whom was ordered to resign from executive officer based on federal indictment of criminal conspiracies and interference of civil rights. (see exh. C, Doc 1: Percentage Graphic Chart, executive officers).

85. The former Sheriff, Lee Baca, is a federal prisoner in a federal penitentiary, of the State of Texas assumedly, and is available for testimonial statement in corroboration of plaintiff's forth coming claims if so, information is subject to correction and, testimony

holding against all defendants in all allegation counts.

**VI.**
**ALLEGATION OF COUNTS**

**COUNT 1: FOR HOUSING DISCRIMINATION AGAINST DEFENDANTS, HOUSING AUTHORITY OF THE CITY LOS ANGELES, LOS ANGELES COUNTY BOARD OF SUPERVISORS, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, LOS ANGELES POLICE DEPARTMENT, DIVISION OF ADULT PAROLE OPERATIONS, AND PATH**

86. Plaintiff alleges and in incorporates by reference to paragraphs 21 through 48 and 53 through 60 of the proceeding of the federal complaint and that alleged in substance of housing discrimination.

87. Plaintiff alleged against defendants, Housing Authority of the City of Los Angeles, Los Angeles County Board of Supervisor, Los Angeles County Sheriff's Department, Los Angeles Police Department and Path had maliciously and under color state law discriminated against and deprived Plaintiff in housing assistance and discrimination under the Sections 100.5(a)(b)(c)(d) of Federal Fair Housing Act, which plaintiff was protected from prohibited discriminatory acts from plaintiff exercise of the constitutional right to housing and housing assistance. see *Vorchheimer v. Philadelphian Owner Association, 903 F. 3d 100, 105-13 (3d Cir. 2018)(plaintiff must need only plausible pleading enough facts to make out elements set forth in housing opportunity)*; *DiMarco Zappa v. Cabanillas, 238 F.3d 25, 35-37 (1st Cir. 2001)("Intentional" discriminated against applicants)*

88. The defendants, Los Angeles County Sheriff's Department, and Los Angeles Police Department interfered with plaintiff's Constitution First Amendment rights to housing

assistance under the Fair Housing Act and Section 8 Act while under color of state law. 42 U.S.C.A. § 3617*(Prohibit to Interference, coercion, or Intimidation with person in the exercise or enjoyment of, or on account of his having exercised rights to housing assistance)*.

89.  In depriving Plaintiffs of housing opportunity rights, defendants intentional and unlawful make violations under color of state law in bad faith while conducted surveillance[3] of plaintiff and with malicious purpose to depravity, interfere, and wanton of plaintiff in conditioning state of homelessness while had surveil plaintiff, and willful disregard of Plaintiff's human rights and safety to housing opportunity. see *Roby v. McKesson Corp., 47 Cal. 4th 686, 713, 101 Cal. Rptr. 3d 773, 793, 219 P. 3d 749 (2009)("Reprehensibility of conduct"); Common Interest Doctrine(common interest that is by two or more collaborators in a non-employment relationship and sharing an equal and undivided interest)*.

90.  The deprivation and interference of housing assistance under color of state law is actionable under and may be redressed by 42 U.S.C. §§ 3604-3513; *The Committee Concerning Community Improvement v. City of Modesto, 583 F. 3d 690, 706 (9th Cir. 2009)(refusing housing assistance))*. years (see exh. D, doc 1: Periodic Timeline Chart, color yellow)

---

[3] When Plaintiff was incarcerated in county jail and inquired by sheriff detectives in 2017, plaintiff was informed 'that he under video recording in 2005 in County of Los Angeles and any day that plaintiff was recorded and all plaintiff's activity and that Federal Bureau of Investigation had collective records. Plaintiff asked, "why he was being recorded", sheriffs replied, "they needed

**COUNT 2: DICRIMINATION IN SECTION 8 HOUSING AGAINST DEFENDANTS, HOUSING AUTHORITY OF THE CITY LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, LOS ANGELES POLICE DEPARTMENT**

91.  Plaintiff alleges and in incorporates by reference to all paragraphs 33 through 37 of the proceeding of the federal complaint and that alleged in substance of discriminatory in Section 8 housing. *Cal. Code Regs. §§ 6910-6928(d)*; *Section 8 of United States Housing Act of 1937*.

92.  Plaintiff alleged against defendants, Housing Authority of the City of Los Angeles, Los Angeles County Sheriff's Department, and Los Angeles police Department had conditioned plaintiff in housing discrimination and negligently and under color state law and interfered with the plaintiff's substantial right under Equal Protection Clause of Fourteen Amendment for Section 8 application process, section 8 housing program vouchers and Section 8 housing under the Section 8 Act(1937)(program) and administrative police for section 8 program of Housing Authority (see exh. A, doc 2-4(nondiscrimination laws of housing policy); *Garcia-Catalan v. U.S., 734 F. 3d 100, 86 Fed. R. Serv. 3ddis 1386 (1st Cir. 2013)(claim must state element for negligence under FTCA for causing dangerous conditions)*.

93.  For the discrimination and interference of under color of state law is actionable under and may be redressed by 42 U.S.C. §§ 3613.

---

to question plaintiff and for plaintiff to answer, to be able to give plaintiff an response answer". In 2020 when plaintiff was approached by uniform deputies and informed of

---

FEDERAL TORT CLAIMS FOR HOSUNIG
DISCRIMINATION AND CONSPIRACY
TO DEPRIVE HOUSING ASSISTANCE

**COUNT 3: CONSPIRACY TO DEPRIVE HOUSING ASSISITANCE AGAINST DEFENDANTS, HOUSING AUTHORITY OF THE CITY LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, LOS ANGELES POLICE DEPARTMENT**

94.  Plaintiff alleges and in incorporates by reference to paragraphs 27 through 31 and 34 and 41 of the proceeding of the federal complaint and that alleged in substance of conspiracy to deprive housing assistance. *see Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)("Standing to sue"—plaintiff must allege); Washington v. Davis, 426 U.S. 229, 96 S. Ct. 2040, 48 L. Ed. 2d 597, 12 (1976).*

95.  Plaintiff alleged against defendants, Housing Authority of the City of Los Angeles, Los Angeles County Sheriff's Department, and Los Angeles police Department, had with malice intent to conditioned plaintiff from housing opportunity and had intentionally motive for racially conspired interference with housing opportunity and defendants Los Angeles County Sheriff's Department and Los Angeles Police Department conspire in influence defendant, Housing Authority of the City of Los Angeles in participated plaintiff's section 8 application, while under color of state law. see *Dilworth v. Riner, 343 F. 2d 226 (5th Cir. 1965)("Conspiracy to racial interference" county official enjoined to conceal right of access to public accommodation under the Civil Rights Act of 1964); Mandelbaum v. United States, 251 F. 2d 748 (2d Cir. 1958)(presumption of interference under FTCA).*

---

of the interference conductivity under surveillance. Plaintiff acknowledged the recollective records of plaintiff's housing applications to the deputies and other related transaction materials with Housing Authority was recorded by another agency and available access.

FEDERAL TORT CLAIMS FOR HOSUNIG
DISCRIMINATION AND CONSPIRACY
TO DEPRIVE HOUSING ASSISTANCE

96.  Plaintiff had been discriminated in housing opportunity services based on racial motivation of nonemployees of defendant Housing Authority of the City Los Angeles. see *Westray v. Porthole, Inc., 586 F. Supp. 834, 839-840(Denied admission based on person of racially color black)*

97.  For the conspiracy to interfere with plaintiff's right to state and federal Constitution First Amendment, and under color of state law is actionable under and may be redressed *by 42 U.S.C. §§ 1983-1985(1)(3). see Larson by Larson v. Miller, 55 F. 3d 1343, 1352-1353, 100 Ed. Law Rep. 890 (8th Cir. 1995)("conspiracy motivated by invidious discriminatory"); 28 U.S. C.A. § 1346(standing and capacity question in a FTCA case).*

**COUNT 4: HOUSING DISCRIMINATION BASED DISABILITY AGAINST DEFENDANTS, HOUSING AUTHORITY OF THE CITY LOS ANGELES, LOS ANGELES COUNTY, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT**

98.  Plaintiff alleges and in incorporates by reference to paragraphs 35, 62 through 66, and 78 through79 in the proceeding of the federal complaint and that alleged in substance of housing discrimination based on disability. *Venegas v. County of Los Angeles, 32 Cal. 4th 820, 843, 11 Cal. Rptr. 3d 692, 87 P. 3d 1 (2004)*("showing of Discrimination intent")

99.  Plaintiff alleged against defendants, Housing Authority of the City of Los Angeles, Los Angeles County Sheriff's Department, And Los Angeles County had negligently discriminated in housing based on plaintiff having disability at the time plaintiff filed application thereat 2005 to 2007 and under color state law. *Forest City Daly Housing, Inc. v. Town of North Hempstead, 175 F. 3d 144, 150-153(2nd Cir. 1999)("Discrimination based on disability"); (see exh. D, doc 1: Periodic Timeline Chart, color green).*

100.  Plaintiff was eligible for housing assistance program and expenditure housing

program voucher from the Department Section 8 from 2005 to 2012 when plaintiff was at

of public interest of the County of Los Angeles while having disabilities. (see 28 U.S.C.A. §

791(Disability Applicable to the Rehabilitation Act Title V)) Therefor the housing

discrimination based on disability of plaintiff and plaintiff 's exercisable right to housing

based on disability under the Fair Housing Act and the attributed defendants under color

of state law is actionable under and may be redressed by 29 U.S.C. § 794-42 U.S.C. § 1231.

see *Tsombanidis v. West Haven Fire Dept., 352 F. 3d 565, 578-580, 15 A.D. Cas. (2d Cir.*

*2003)(plaintiff must had present reasonable opportunity to government entity to*

*accommodate);* (see exh. D, doc 1: Periodic Timeline Chart, color black)


**COUNT 5: FAILURE TO PROVIDE REASONABLE ACCOMENDATION**
**AGAINST DEFENDANTS, HOUSING AUTHORITY OF THE CITY LOS ANGELES,**
**LOS ANGELES COUNTY AND LOS ANGELES COUNTY**

101.  Plaintiff alleges and in incorporates by reference to paragraphs 62 through 79

in the proceeding of the federal complaint and that alleged in implication of

failure to provide reasonable accommodation.


102.  Plaintiff alleged against defendants, Housing Authority of the City of Los Angeles and

Los Angeles County (Board of Supervisor) had negligently failed to provide reasonable

accommodation of housing, when defendants having adequate knowledge of plaintiff's

disabilities. see *Oconomowoc Residential Programs v. City of Milwaukee, 300 F. 3d 775, 783*

*(7th Cir. 2002)(*burden to show that an accommodation is reasonable on its face).


103.  For the failure to accommodate housing assistance or housing for plaintiff' and under

color of state law is actionable under and may be redressed by <u>28 U.S.C.A. § 791</u> and <u>42 U.S.C. § 3604(a)</u> and <u>42 U.S.C. §§ 1982-1983(Discrimination in public accommodation)</u>. see <u>*28 U.S. C.A. § 1346(Plaintiff standing to sue); Fed. R. Civ. P. §17*</u>(Capacity of Parties)

**COUNT 6:  PRELIMINARY INJUNCTION RELIEF AGAINST DEFENDANT, HOUSING AUTHORITY OF THE CITY LOS ANGELES**

**104.  Plaintiff** alleges and in incorporates by reference all of 21 through 23 and 62 through 79 in the proceeding of the federal complaint and that alleged in implication substance for preliminary injunction relief for emergency housing assistance.

**105.  Plaintiff** alleged against defendants, Housing Authority of the City of Los Angeles for discriminatory participation in the codefendants' conductivity that had interfered with plaintiff rights to housing assistance and opportunity and had not for the racially discriminatory housing acts and interference, plaintiff would had received and been conditioned to unprejudiced housing assistance sometime between 2006 to 20012. see <u>*Arguello v. Conoco, Inc. 207 F. 3d 803, 808-812 (5th Cir. 2000)*</u>*(Racial discriminatory act within scope of employment)*; <u>Cabrera v. Jakabovitz, 24 F. 3d 375, 64 Fair Empl. Prac. Cas. 1239 (2d Cir. 1994)</u>*(Race discrimination in zoning)*.

**106.** For preliminary injunction relief claim can be redressed under <u>42 U.S.C.A. §§§ 1981-2000a(e)</u>(services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin). see <u>*Garrett v. Tandy Corp., 295 F. 3d 94, 98 (1st Cir. 2002)*</u>*(plaintiff must show that was a protect class of minority and that*

*defendant discriminated based on race); Johnson v. Railway Exp. Agency, Inc., 421 U.S. 454, 461, 95 S. Ct. 1716, 1720, 44 L. Ed. 2d 295, 301 (1975)(Supreme Court established declaratory and equitable relief may rewarded in violation of Section 1982); Curtis v. Loether, 415 U.S. 189, 195, 94 S. Ct. 1005, 10098, 39 L. Ed. 2d 260, 267, 18 Fed. R. Serv. 2d 189 (1974)(Relief sought in traditional form—offered in court of law); 42 U.S.C.S. § 3613(1)(B)(C)*

## VII.
## RELIEF REQUESTED

107.  Plaintiff states that no adequate remedy exists at law for the injuries suffered by defendants herein, insofar as housing opportunity that defendants had conditioned and denied plaintiff for extended amount of years (see exh. D, doc 1: Periodic Timeline Chart) and that such loss of housing opportunity cannot be secured in absent injunctive relief. If this court does not grant injunctive relief of the type plaintiff is seeking and for the purpose specified below, plaintiff will suffer irreparable injury. Therefore, plaintiff requests the following injunctive relief: All defendants be contributive liable of divided equal coverage shared and proportionate share of percentage coverage of plaintiff's monthly rent, and whereas any housing unit or apartment or condominium or hotel housing is accommodated or seek be accommodate by injunctive relief for plaintiff having housing residency in the County of Los Angeles and anywhere in the United States.

WHEREFORE, Plaintiff, CAVIAR MICKENS respectfully request the following relief:

108. Plaintiffs alleges and incorporates by reference all of the preceding paragraphs 21 through 80 in this federal complaint for:

---

FEDERAL TORT CLAIMS FOR HOSUNIG
DISCRIMINATION AND CONSPIRACY
TO DEPRIVE HOUSING ASSISTANCE

PAGE 39 OF 41

a. Trial by judge on all issues so triable;

c. Monetary rewards in allegation counts 1 through 5.

109.  Special damages for extensive loss of housing opportunity and therewithin federal program services, in the amount of $30,000. *or* in an amount according to proof.

110.  Special damages for intangible injuries whereas plaintiff had suffered physical heath caused by forced of homelessness condition, in the amount of $30,000. *or* in an amount according to proof.

111. Of punitive damages cause by defendants' dangerous activities, and humiliation, embarrassment of plaintiff, and loss of civil rights during plaintiff's homeless condition, in the amount of $30,000. *or* in an amount according to proof. And based on proven facts against defendants. see *New Jersey Coalition of Rooming and Boarding Housing Owners v. Mayor and Council of City of Asbury Park, 152 F. 3d 217, 222-224 (3d Cir. 1998)*("proving actual damages, plaintiff may be awarded and mandatory not discretionary").

112.  For preliminary injunctive relief as specified in paragraph 102 above and preliminary injunction against defendant Housing Authority of the City Los Angeles.

113.  Permanent injunction enjoining defendants and or defendants' agents, servants, and employees and all persons acting under, in concert with, or for defendants, in paragraph 85 above.

114. For costs of suit herein incurred pursuant to <u>42 United States Code Section 3613(c)</u>.

115. For such other and further relief as the court deems proper.

Dated: 12/11/21                          BY:  <u>CAVIAR MICKENS</u>
                                              Pro Se Litigant's Name


                                         _____
                                         Signature
                                         Caviar Mickens
                                         2309 Santa Monica
                                         Santa Monica, CA 90404
                                         Email: Caviarmickens36@yahoo.com
                                         Ph.: 424.436/1071
                                         In Pro Se

## CERTIFICATE OF SERVICE

I, CAVIAR MICKENS HEREBY CERTIFY that I filed today, on Monday, December 13, 2021, the foregoing with the Federal Clerk of the Court for the Middle District of Florida, which will send notification of such filing to all persons registered for this case, including the Defendants. (*see National Ass'n of Mfrs. v. S.E.C.  956 F. Supp. 2d 43, 75 (D.D.C. 2013)(giving prior notice)*

_____
**Plaintiff CAVIAR MICKENS**
**SELF-REPRESENTING**
**2309 Santa Monica Blvd.**
**Santa Monica, CA 90404**
**Email: Caviarmickens36@yahoo.com**
**Phone: 424.426.1071**

## VERIFIED COMPLAINT FOR FEDERAL TORT CLAIMS FOR VIOLATION OF HOUSING DISCRIMINATION

1. I, CAVIAR MICKENS, VERIFIES HEREIN: I am the "Plaintiff" in to be proceeded in a United States District Court, thereof Southern California, Los Angeles Division, and am bring a federal complaint tort claims action for housing discrimination and the deprived conditioned that plaintiff was subjectively against defendant(s), Los Angeles County, Los Angeles County Sheriff's Department, Los Angeles Police Department, Division of Adult Parole Operations and Path, thereof which each said defendants are resided of place of business with jurisdiction of the federal court pursuant *Fed Rul. Civ. Proc. §§ 4(e)(i)-82* as well under *Title 28 U.S.C. §1343(3)* and are authorized to be sue under *Title 42 U.S.C. §§ 1984(a)(b)*-3404 and *Fed Rul. Civ. Proc. §§§17(a)(b)(3)(c)(C), 19(a)(B)(i)-20(a)*, for any relief or enforce (*re United Heath Care Corp. v. American Trade Ins. Co., Ltd., 88 F. 3d 563, 569, (8th Cir. 1996)*).

2. Plaintiff is excluding parties, and under Section 19 of Federal Rules of Civil Procedures, for nonjoinders to the action and are not stated in the federal complaint, thereof the naming nonjoinders, the Los Angeles County District Attorney's Office, Los Angeles Mayor's Office and KTLA News 5 (fictitious name), California Homeland Security, Federal Bureau of Investigation, and US Military Navy based on jurisdictional interest that are not substantiated in this action to bring parties to the action and but the parties had been cited by the defendants in 'reference to some contributory influence of caused defendants' acts' but the allegation made by defendant did not rise to subjectivity based on jurisdiction integrity. *National Licorice Co. v. National Labor Relations Board, 309 U.S. 350,*

**VERIFICATION**

*363, 60 S. Ct. 569, 84 L. Ed. 799(1940)*(narrow goal of protected public interest).

3. In the complaint for federal tort claims against defendants, the alleged information was read of the foregoing "federal complaint" and the knowing informative contents alleged against defendants.

4. And, thereof: I, Plaintiff believes that the information alleged against pursued defendants are true and accurate claims for housing discrimination, under federal perjury of law. [18 U.S.C. §§1621-1623; 28 U.S. Code § 1746]

This federal complaint, and complaint for Federal Tort Claims, has been computer type written by word process and word counted for approximately 8,973 and for each word prepared for complaint is consisted of 35 pages.

12/07/21                                    BY: CAVIAR MICKENS
                                                 Pro Se Litigant's Name

                                           Caviar Mickens
                                           2309 Santa Monica
                                           Santa Monica, CA 90404
                                           Email:
                                           Caviarmickens36@yahoo.com
                                           Ph.: 424.436/1071
                                           In Pro Se

VERIFICATION

PAGE 2 OF 2